## A96A1706. STEED v. DEAL.
### (482 SE2d 527)

BLACKBURN, Judge.

We granted the natural mother's application for discretionary appeal from the trial court's denial of her motion for new trial in the father's change of custody action. In that action, the court granted joint legal and physical custody of their nine-year-old son to each of the parents and provided that physical custody would alternate each July 1. The father had been awarded visitation rights at a hearing in the mother's previously filed paternity action. The mother resides in Colbert, Georgia, and the father resides in Statesville, North Carolina.

The child lived with his father for over two years during kindergarten, first grade and the beginning of his second-grade year. He has lived with his mother at all other times. When the child was returned to his mother in 1993, he was having emotional and educational problems, did not know his A, B, C's, and could not count to 20. His mother enrolled him in a special education class in 1994 and he made the merit list for the first time. He made five A's and two B's. His special education teacher testified that he had shown significant improvement.

1. In her first enumeration of error, the mother contends the trial court improperly granted joint legal custody because neither party requested it. The trial court, however, is required to consider joint custody whenever it finds both parents fit and equally capable of caring for their child. Although the trial court is not required to grant joint custody, it may do so whenever it finds joint custody is in the best interest of the child. *Baldwin v. Baldwin*, 265 Ga. 465 (458 SE2d 126) (1995). As the trial court found this arrangement to be in the child's best interest, it was not error to award joint custody just because neither party requested it.

2. The mother also argues that insufficient evidence was presented to warrant the change from sole custody to joint custody, as no material change in circumstances was shown. However, because a party may not expand her enumeration of error by arguments and citation in the brief, we do not consider her arguments on this issue. *In the Interest of S. K. L.*, 199 Ga. App. 731, 734 (2) (405 SE2d 903) (1991).

3. The mother further argues that the terms of the change of custody order are detrimental to the child. The court's order transfers custody of the child between the parents on July 1 of each year until he reaches the age of majority. This order has the effect of requiring the child to change schools, make new friends, and change activities every year. It would also require an annual change in the child's mental therapy and counselor and cause a disruption of his special

education program. However, the trial court, in its order, mandated that the child continue to participate in each of these programs.

No evidence shows this arrangement will serve the child's best interest. On the contrary, evidence from teachers and mental health professionals shows this child suffers from attention deficit disorder and depression, and that he requires special education. A psychologist testified that the child's condition requires him to remain in a stable environment and opined that the yearly transition would adversely affect the child. Dr. Glazer, who performed psychological evaluations on the parents and the child, testified that he did not "see any evidence that [the mother and father] could share decision making at the present." He also testified that "in our work with the child [the change of custody order] is probably the worse scenario that I can imagine in that with the problems that he's seeing mental health people for and help from the school for, stability and consistency are the most important things. And the order calls for him to be moved about all the time. And I'm very concerned about that."

In *Lifsey v. Lifsey*, 256 Ga. 613, 614 (2) (351 SE2d 637) (1987), the Supreme Court struck down a nearly identical custody order. If there is any reasonable evidence to support the trial court's decision as to what is in the best interest of the child in a change of custody action between parents, such decision will be affirmed on appeal. *Lifsey*, supra. Here, the trial court recited certain negative conclusions, concerning each of the parents. It concluded that the mother's relationship with Earl Hardy was detrimental to the child. It further concluded that the mother's allowance of a trip to Florida by the family, including the son and Earl Hardy, when the court had ordered her to not allow the child to be around Hardy, constitutes a material change that is detrimental to the child. There is no evidence in the record that there was any inappropriate conduct engaged in between the parties and the mother's daughter was also present.

The court concluded that the father had recovered from a one-time drinking problem. The father had previously been held in contempt of court for failure to pay child support and was in arrears in the amount of $8,175 in 1994. The father reported an adjusted gross income on his federal income tax return for 1994 in the amount of $61,341. The trial court, however, awarded joint legal and physical custody of the child to each of the parents, thereby establishing that each of the parents was fit and capable of having custody of said child.

Here, as in *Lifsey*, supra, there is no evidence in the record that might support a finding that the best interest of the child will be served by requiring that he change residence, school system, special education teachers, doctors, therapists, circle of friends, activities, and states on a yearly basis. For that reason, we reverse the trial

court's order regarding the particulars of the joint custody arrangement and remand this matter for further consideration as to this issue, consistent with this opinion. Pursuant to OCGA § 19-9-3 (a) (2), the trial court should "exercise its discretion to look to and determine solely what is for the best interest of the child . . . and what will best promote [his] welfare and happiness and . . . make its award accordingly."

*Judgment affirmed in part, reversed in part, and case remanded. McMurray, P. J., Pope, P. J., and Johnson, J., concur. Andrews, C. J., Smith and Ruffin, JJ., and Senior Appellate Judge Harold R. Banke concur fully and specially. Beasley, J., concurs in part and dissents in part.*

SMITH, Judge, concurring specially.

I concur fully in the majority opinion. I write separately to point out the dangers of the approach advocated by the dissent, which circumvents the clear jurisdictional limitations of this Court. However legally correct or emotionally appealing an argument may be, it must be properly enumerated in order to be considered. "Our function as intermediate appellate judges is to correct errors of law which are complained of. It does not extend to reaching into the record and *sua sponte* raising and deciding issues not presented by the parties. [Cits.] . . . . 'The Court of Appeals is a court for the correction of errors below; it is not a court of original jurisdiction. [Cit.]' Not only was the issue not raised or ruled on below, it is neither enumerated as error nor briefed. These are all prerequisites to our consideration of a question. [Cits.] It thus has been subjected to no adversarial debate by the parties, no submission of argument or citation of authorities on both sides of it . . . . We take a big jurisdictional step when we venture beyond the matters complained of." (Footnote omitted.) *Taylor v. State*, 186 Ga. App. 113, 115-116 (366 SE2d 422) (1988) (Beasley, J., dissenting). Contrary to the assertion made by the dissent here, the raising, ruling, enumeration, and briefing of an issue are "*all* prerequisites to our consideration of a question." (Emphasis supplied.) Id.[1]

I am authorized to state that Chief Judge Andrews, Judge Ruffin, and Senior Appellate Judge Harold R. Banke join in this special concurrence.

---

[1] See, e.g., *Norman v. State*, 212 Ga. App. 105, 109 (4) (441 SE2d 94) (1994) (Beasley, J.); *Loyd v. State*, 202 Ga. App. 1, 2 (1) (c) (413 SE2d 222) (1991) (Beasley, J.); *Worley v. State*, 201 Ga. App. 704 (2) (411 SE2d 760) (1991) (Beasley, J.); *Giles v. State*, 197 Ga. App. 895, 897 (1) (400 SE2d 368) (1990) (Beasley, J.); *Scott v. State*, 193 Ga. App. 577, 579 (2) (388 SE2d 416) (1989) (Beasley, J.); *City of College Park v. Ga. Power Co.*, 188 Ga. App. 223, 224 (372 SE2d 493) (1988) (Beasley, J.).

BEASLEY, Judge, concurring in part and dissenting in part.

I agree that the evidence does not support the terms of the change of custody order, as held in Division 3. In fact, the terms will be detrimental to the best interests of the child, as the evidence clearly shows.

I cannot concur in the narrow interpretation of the mother's first enumeration of error, filed pursuant to Rule 22, and the Court's refusal to consider the sufficiency of the evidence to change custody of this troubled ten-year-old boy from his mother to a joint arrangement. She worded the first enumeration of error as being the order granting legal custody jointly "when" neither party requested such. She did not say "because"; if she had, it could have been construed technically to limit her challenge to the joint custody award to one ground for that enumerated error. But she did not do so. Instead, she challenges the joint custody award because neither parent requested joint custody as a solution and the evidence does not support it.

Even if her enumeration itself is unartfully worded, it does not require an enlargement of it so as to include issues not embraced therein. Instead, her two-pronged argument explains her position. A consideration of the sufficiency of the evidence does not violate the appellate procedural rule quoted in *In the Interest of S. K. L.*, 199 Ga. App. 731, 734 (2) (a) (405 SE2d 903) (1991).

OCGA § 5-6-40 requires the appellant to file "an enumeration of the errors which shall set out separately each error relied upon. [It] shall be concise. . . ." OCGA § 5-6-48 (f) provides that "Where it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, . . . what errors are sought to be asserted upon appeal, the appeal shall be considered in accordance therewith notwithstanding . . . that the enumeration of errors fails to enumerate clearly the errors sought to be reviewed."

Appellant's first enumeration of error is not so deficient that we cannot consider her complaint. It is totally evident from the nature of the proceeding below and her argument in support of her first enumeration that part and parcel of her complaint on appeal is that a change from sole to joint custody is insupportable factually. In the third sentence of the very first paragraph of her argument she states her position that "[t]he facts of this case do not support the court's joint custody award." This is the whole focus of the remainder of her argument on the first enumeration. We are required to construe the Appellate Practice Act liberally "so as . . . to avoid . . . refusal to consider any points raised therein, except as may be specifically referred to in [the Appellate Practice Act]." OCGA § 5-6-30.

This does not contradict the legal principles called to support by the dissent in *Taylor v. State*, 186 Ga. App. 113, 115-116 (366 SE2d 422) (1988). In that case the appellate court created an issue itself,

the nature of which required express prior raising and ruling in the trial court. A challenge to the sufficiency of the evidence, on the other hand, may be pursued in the appellate court because it is inherent in the trial of the case. It is the issue being tried. Moreover, the question decided by the appellate court in *Taylor* had not been enumerated as error or encompassed in any enumeration or briefed. According to the governance of *Hess Oil &c. Corp. v. Nash*, 226 Ga. 706, 709 (177 SE2d 70) (1970), the court in *Taylor* exceeded its authority. Here the question of evidence sufficiency was embraced in the enumeration and briefed at length.

Cases in which we have refused to expand explicit enumerations involved efforts of appellants to enumerate one error and complain of something else. So, for example, in *Norman v. State*, 212 Ga. App. 105, 109 (4) (441 SE2d 94) (1994), the error enumerated was the failure to give a certain instruction to the jury concerning the effect of violation of the rule of sequestration by a witness. The additional error briefed but not enumerated was that the court failed to make a further inquiry about possible violation of that rule. Those were two different matters entirely.

In *Loyd v. State*, 202 Ga. App. 1, 2 (1) (c) (413 SE2d 222) (1991), appellant stated in his enumeration one ground, a procedural one, for the asserted error of the admission of similar transactions, i.e., failure of proper prior notice. In his brief, he also attempted to raise a substantive challenge to the similarity of the prior transaction to the one on trial. We first ruled on the merits of this substantive challenge and then, as a second basis for declining to reverse the judgment on this enumeration, stated the rule precluding enlargement.

In *Worley v. State*, 201 Ga. App. 704 (2) (411 SE2d 760) (1991), we refused to consider the issue of similarity of other crimes when the enumeration complained only that defendant had not been identified as the perpetrator. Also in *Giles v. State*, 197 Ga. App. 895, 897 (1) (400 SE2d 368) (1990), the brief included an issue not made in the enumeration. The enumeration challenged the constitutionality of a federal statute, but the Supreme Court transferred the case to the Court of Appeals. In the portion of the brief concerning that enumeration, appellant also challenged the validity of one of the affidavits used to support the trial court's order. This was simply not included in the reach of the enumeration.

Appellant challenged the sufficiency of the evidence in *Scott v. State*, 193 Ga. App. 577, 579 (3) (388 SE2d 416) (1989), but in his brief he also questioned the voluntariness of his statements. We ruled that this was not included in the context of a challenge to evidence sufficiency.

In *City of College Park v. Ga. Power Co.*, 188 Ga. App. 223 (372 SE2d 493) (1988), there were three procedural and one substantive

contentions of error argued in a brief submitted to support one enumeration. The court limited its review to the one alleged error enumerated, i.e., whether the trial court had exercised its discretion with respect to the matter at issue.

None of these cases presents the situation here, where the enumeration "fairly encompass[es]" the argument made, which is "within" the enumerated error. *MacDonald v. MacDonald*, 156 Ga. App. 565, 566 (1) (275 SE2d 142) (1980).

Most importantly, we should not lose sight of what we are dealing with here. If, as appellant mother argues, the fundamental custody change being effected by the court's order in this at-risk boy's life is error as a matter of law, we should not refuse to rectify it because of a rigid standard as to what is encompassed in the scope of an enumeration of error. That elevates form over substance even when the substance is provided at length in appellant's address to the court explaining the rationale for her position and citing legal authority to justify it.

If we were to examine it, we would have to conclude that the test for change of custody has not been met by the father. The law is that the initial award of custody is conclusive "unless there have been subsequently to the decree new and material changes in the conditions and circumstances *substantially affecting the interest and welfare of the child.* Though the judge is given a discretion, he is restricted to the evidence and unauthorized to change the custody where there is no evidence to show new and material conditions that affect the welfare of the child." (Citations and punctuation omitted; emphasis in original.) *Livesay v. Hilley*, 190 Ga. App. 655, 656 (379 SE2d 557) (1989). Although *Livesay* involved a divorce decree and this case involves a consent legitimation order as the original source of custody determination, the standard is the same. See *Nodvin v. Nodvin*, 235 Ga. 708, 709 (221 SE2d 404) (1975); *Templeman v. Earnest*, 209 Ga. App. 557, 558 (434 SE2d 106) (1993).

If anything, the conditions strongly indicate that sole custody should remain in the mother. The evidence described in the majority opinion demonstrates this. In addition, not only was the child in serious developmental, emotional, and psychological trouble after somewhat over two of his formative years with the father, who had not taken appropriate or adequate steps to correct it, but the father had not provided the court-ordered support in the child's early years. He was over $8,000 in arrears when the court ordered him to return the boy to his mother "instanter" in December 1993.

The only negative material change in circumstances found by the court affecting the mother's legally-favored sole custody was her relationship with Earl Hardy, which resulted in contact with the child although they did not live together. Without describing how this

harmed the child, the trial court found that this contact was detrimental to him.

One instance of them being together disturbed the court because it had occurred shortly after the court orally indicated at the close of the evidence that it would not prejudge the case before it received briefs but it wanted the mother not to permit contact with Hardy. The instance was the Labor Day trip to the Okefenokee Swamp and Florida, taken by the mother, the child, the child's half-sister, and Hardy. The trip was taken because it had long been promised by Hardy to the child, who had learned about the swamp at school and wanted to see it. Although this does not excuse non-compliance if there was an order, it does not create a change in circumstances so as to warrant change from sole custody. Dr. Glazer, the professional who evaluated the parties pursuant to court order, testified that the child had made "substantial progress" after his return to his mother's custody and that, with respect to Hardy, the child did not appear to be afraid or feel that he was a threat.

Considering the severe problems which the child developed when in the father's custody, on the one hand, and the enormous strides to normalcy and even achievement made when in the mother's custody, a change of custody is simply not indicated as a matter of law. There is no reasonable evidence to support the trial court's findings that there has been (1) a change in condition or circumstances of parents or child, (2) which substantially affects the interest and welfare of the child, (3) which is material and (4) has occurred since the prior award. OCGA § 19-9-1 (b); *Kennedy v. Adams*, 218 Ga. App. 120, 121-122 (1) (460 SE2d 540) (1995); *Lightfoot v. Lightfoot*, 210 Ga. App. 400, 403 (3) (436 SE2d 700) (1993); *Arp v. Hammonds*, 200 Ga. App. 715, 716-717 (409 SE2d 275) (1991); *Johnson v. Hubert*, 175 Ga. App. 169, 170 (333 SE2d 21) (1985). Most importantly, there is no evidence to support the finding that the change from sole custody in the mother is in the best interest of the child.

DECIDED MARCH 3, 1997.

*Fitzpatrick & Camp, Barry L. Fitzpatrick*, for appellant.
*R. Dale Perry, John A. Kupris*, for appellee.